☑ Original ☐ Duplicate Original

**CLERK'S OFFICE**
**A TRUE COPY**
**Mar 17, 2023**
**s/ Erin Hayes**
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) |
| Records & information associated with the Target Cell Phone | ) |
| assigned call number 920-273-9112 in the possession, | ) |
| custody, or control of Verizon Wireless (See Attachments) | ) |

Case No. **23-m-341**
**Matter No.: 2023R00006**

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A; over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____3-31-23_____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m. ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. Stephen C. Dries_____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: _____3-17-23 1:15 pm_____

_Stephen C. Dries_
*Judge's signature*

City and state: _____Milwaukee, WI_____

Hon. Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**
**Property to Be Searched**

1. The cellular telephone assigned call number 920-273-9112 (the "Target Cell Phone"), whose wireless service provider is Verizon Wireless (the "Provider"), a wireless communications company that is headquartered at 180 Washington Valley Rd, Bedminster, NJ 07921; and

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of Verizon Wireless, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

3. The Target Cell Phone.

**ATTACHMENT B**
**Particular Things to be Seized**

### I. Information to be Disclosed by the Provider

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A. This information also includes: (i) any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN; (ii) Source and destination telephone numbers; and (iii) date, time, and duration of communication.

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A, and the following information about the customers or subscribers associated with the Target Cell Phone for the time period January 1, 2022, through the present:

  i. Names (including subscriber names, user names, and screen names);

  ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

  iii. Local and long-distance telephone connection records;

iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

v. Length of service (including start date) and types of service utilized;

vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Verizon Wireless, Verizon Wireless is required to disclose the Location Information to the government. In addition, Verizon Wireless must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Verizon Wireless's services, including by initiating a signal to determine the location of the Target Cell Phone on Verizon Wireless's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**II. Information to Be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of Title 18, United States Code, Sections 922(a)(1)(A); 933, 922(d) and 922(o) by Torrance MCCLAIN and others during the relevant time period.

All information described above in Section I that will assist in locating Torrance MCCLAIN.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

3

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

CLERK'S OFFICE
A TRUE COPY
Mar 17, 2023
s/ Erin Hayes
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) |
| Records & information associated with the Target Cell Phone assigned call number 920-273-9112 in the possession, custody, or control of Verizon Wireless (See Attachments) | ) |

Case No. **23-m-341**

**Matter No.: 2023R00006**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A; over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C § 922(a)(1)(A); 933, 922(d) and 922(o) | Conspiracy to import, manufacture, or deal in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce; trafficking in firearms; possession of a machinegun; |

The application is based on these facts:

See attached Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

**SA Luke Barker, ATF**
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone _____ *(specify reliable electronic means).*

Date: 3-17-23

_____
*Judge's signature*

City and state: Milwaukee, WI

**Hon. Stephen C. Dries, U.S. Magistrate Judge**
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Luke Barker, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 920-273-9112 (the "Target Cell Phone"). This information is in the custody or control of Verizon Wireless, a wireless telephone service provider headquartered at 180 Washington Valley Rd, Bedminster, NJ 07921. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act.  *See* 18 U.S.C. §§ 3121-3127.  The requested warrant therefore includes all the information required to be included in an order pursuant to that statute.  *See* 18 U.S.C. § 3123(b)(1).

3.      I am a Special Agent of the United States Justice Department, Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF), currently assigned to the Milwaukee Field Office. I have been so employed since November of 2015. Since becoming a Special Agent, I have been a part of multiple investigations into firearms trafficking and illegal possession of firearms.

4.      I have over 15 years of law enforcement experience. I have completed approximately 26 weeks of training at the Federal Law Enforcement Training Center (Glynco, Georgia), as well as the ATF National Academy. That training included various legal courses

related to Constitutional Law as well as search and seizure authority. Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as: interviewing, surveillance, and evidence collection. As a police officer for the Aurora Police Department, I had experience in a multitude of criminal investigations. In addition to my regular duties, I received training in drug interdiction, drug identification, gangs, and interviews and interrogations.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 922(a)(1)(A); 933, 922(d) and 922(o) have been committed by Torrance MCCLAIN, born xx/xx/1992, of, Wisconsin.

7. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, see 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

8. On July 14, 2022, MCCLAIN was arrested after a traffic stop by Fond Du Lac County Sheriff Department (FDLC). During the traffic stop, FDLC Sheriff's Deputies identified MCCLAIN as the driver of a turquoise 2005 Pontiac Grand AM with Wisconsin license plate (ANW5853). Deputies also identified the passenger, Courtney JACAK (F/W DOB: xx/xx/1994).

2

ATF SA's later learned that JACAK is MCCLAIN's girlfriend. They both listed an address of 400 Southview Dr in North Fond Du Lac, WI.

9. During the course of the traffic stop, Sheriff's Deputies located two (2) bags of marijuana in center console with a gross weight of 12 grams, .223 rifle ammunition in center console, a backpack with Glock 20 Gen 4 10 mm handgun (with serial #BWZZ787) with fully loaded magazine located under front passenger seat, miscellaneous ammunition throughout the interior of the vehicle, an AR15 pistol (serial unknown) with 2 fully loaded magazines located in the trunk.

10. Subsequent to his arrest, MCCLAIN was charged with 961.41(3g)(e) Possession of THC (2nd offense), 941.23(2) Carry Concealed Weapon has and 961.573(1) Possession of drug paraphernalia. MCCLAIN currently has open felony state case in Fond Du Lac County (2022CF000509).

11. On October 3, 2022, ATF Special Agents (SA's) met with Fond Du Lac Police Department (FDLPD) Detectives who stated a source of information (SOI) had information regarding MCCLAIN manufacturing and selling firearms. The SOI wanted to remain anonymous.

12. On the same day, ATF SA's met with the SOI. The SOI stated that he/she knows a male named Torrance MCCLAIN and has had conversation with MCCLAIN regarding firearms. During their conversations the CI learned that MCCLAIN has a YouTube channel under the name "Ghost Gunner 27" and that MCCLAIN manufactures firearms with a 3D printer. The CI stated MCCLAIN offered to sell him/her a firearm but the CI declined and said he/she couldn't because he/she was a felon and was prohibited from purchasing firearms. The CI stated MCCLAIN informed him/her that he believed everyone should have the right to possess a

3

firearm and still offered to sell the CI a firearm if he/she wanted. The CI ultimately declined the firearm. ATF SA's showed the CI a n driver's license photograph of MCCLAIN and the CI confirmed that was the same MCCLAIN that offered to sell him/her a firearm.

13.     The SOI voluntarily gave the information to law enforcement. The SOI stated he/she would be willing to further cooperate and work with law enforcement for consideration of expungement of his/her felony convictions. Your affiant informed the SOI that expungement of felony convictions could not be guaranteed and were unlikely. The SOI has the following criminal convictions in the state of Wisconsin; Misdemeanor - Possession of THC, Cocaine and Drug paraphernalia in 2014, Misdemeanor - Possession of Cocaine in 2018, Felony - Operating a vehicle and fleeing/eluding a traffic officer in 2018, Felony - Possession of Cocaine in 2021, Felony - Manufacture/deliver amphetamine in 2021, Felony -  Manufacture/deliver cocaine in 2021, Felony - Possession of Cocaine in 2021,  Felony - Possession w/intent amphetamine in 2021, Felony - Possession with intent heroin in 2021, Felony - Bail jumping in 2021.

14.     The information given by the SOI regarding MCCLAIN manufacturing and selling firearms was new to your affiant and Detective Henning, however Detective Henning did know of MCCLAIN's criminal history and that he lived in the Fond Du Lac, WI area.  Detective Henning informed your affiant that the SOI had been a reliable source of information in previous investigations. During the interview with the SOI, your affiant was able to locate the YouTube Channel for "Ghost Gunner 27." The channel had multiple videos depicting firearms, some of which appeared to have been manufactured with a 3D printer.

15.     On November 15, 2022, your affiant was informed by Detective Henning that an inmate at Fond Du Lac County jail had information regarding MCCLAIN and firearms.

4

16.     On November 21, 2022, your affiant conducted an interview with the inmate at Fond Du Lac County jail.

17.     On November 21, 2022, ATF SA's conducted an interview with the inmate at Fond Du Lac County jail.

18.     During the interview, the inmate shared details of MCCLAIN, whom he knows as "Torrance," and his knowledge of MCCLAIN'S activity with firearms. The inmate stated he/she knows a male named "Torrance" who has a 3D printer and makes firearms and automatic "switches" (*your affiant knows that "switch" is a common slang term for a machine gun conversion kit that when placed into a semiautomatic handgun has the capability to convert the firearm into a fully automatic handgun*). The inmate knows that "Torrance" sells firearms to people and even tried to sell the inmate a "baby AR15" in the past even though "Torrance" knows the inmate is a convicted felon. The inmate knows that "Torrance" has a YouTube page where he shows off the firearms he makes. The inmate stated he/she has located firearms customers for "Torrance" during the course of the last year. The inmate stated "Torrance" drives a purple GXP Grand Prix and has driven to Milwaukee to sell firearms. The inmate knows that "Torrance" has made six (6) AR 22s three (3) AR15s, four (4) Glock 19s and modified switches that "go inside the gun." The inmate stated that "Torrance" will sell a Glock for $500 and an AR rifle for between $800 to $1600 depending on the rifle and the situation. ATF SA's showed a driver's license photograph of MCCLAIN to the inmate who positively identified the person in the photograph as "Torrance."

19.     The inmate had recently been arrested and was cooperating with law enforcement in light of his/her new criminal charges. The inmate voluntarily gave the information in order to potentially lighten his/her sentence if found guilty of his/her current criminal case. The inmate

5

has the following criminal convictions; Misdemeanor - Disorderly conduct in 2012, Misdemeanor - Battery in 2012, Misdemeanor - Disorderly conduct domestic abuse in 2013, Felony - Bail jumping in 2014, Felony - Manufacture/deliver heroin 2019. The inmate currently has an open case for prohibited possession of a firearm and carrying a concealed weapon. This case is not yet resolved.

20.     The information given by the inmate regarding MCCLAIN appear to be truthful. The information regarding MCCLAIN manufacturing firearms with a 3D printer and his YouTube page is consistent to the information provided by the SOI on October 3, 2022. Also, through the course of the investigation your affiant discovered that both MCCLAIN and his girlfriend JACAK purchased Glock model 20 handguns in July of 2022.

21.     On November 22, 2022, ATF SA's located a blue/purple colored Pontiac Grand Am with license plate ANW5853 parked in front of MCLAIN'S listed address, 400 Southview Dr in North Fond Du Lac, WI. The vehicle was found to be registered to Courtney JACAK, MCCLAIN's girlfriend.

22.     On December 2, 2022, ATF SA's and Task Force Officers (TFO's) met with ATF Confidential Informant # 31524 (CI-31524). CI-31524 stated they had knowledge of an individual they knew to be illegally manufacturing and selling Privately Made Firearms (PMFs). CI-31524 stated they had been to MCCLAIN's residence and had seen machinery as well as 3D printing devices used for manufacturing PMFs. CI-31524 stated MCCLAIN has all types of "stuff" (firearm components) at his residence to help build PMFs. CI-31524 further stated they know MCCLAIN to deal in pound quantities of marijuana.

6

23.     ATF SA's and TFOs then directed CI-31524 to make recorded contact with MCCLAIN and/or any other co-conspirators believed to be illegally manufacturing or selling firearms.

24.     On December 19, 2022, CI-31524, under the direction of ATF SA's and TFO's met with MCCLAIN and purchased one black privately made firearm and one automatic machine gun conversion kit from MCCLAIN for $800.  Following the purchase, ATF SA's observed MCCLAIN return to his listed address in North Fond du Lac, WI.

25.     On January 3, 20222, CI-31524, under the direction of ATF SA's and TFO's met with MCCLAIN and purchased two white and black privately made firearms and one machine gun conversation kit from MCCLAIN for $1600.

26.     On January 17, 2023, CI-31524, under the direction of ATF SA's and TFO's met with MCCLAIN and purchased two tan and black privately made firearms and one black privately made firearm for $3,000.  The black firearm was loaded with one 9mm Luger G.F.L. round in the magazine.  MCCLAIN claimed two of the firearms functioned as "fully automatic," however testing by ATF revealed they did not function as "fully automatic."

27.     On February 6, 2023, CI-31524, under the direction of ATF SA's and TFO's met with MCCLAIN and purchased two tan and black privately made firearms, one black privately made firearm and one red and black privately made firearm for $4,800.

28.     During the meeting with MCCLAIN on, February 6, 2023, CI-31524 told MCCLAIN they were a felon and could not purchase firearms.  MCCLAIN proceeded to complete the purchase with CI-31524 anyway.

29.     CI-31524 had recently been arrested and was facing new criminal charges. CI-31524 was cooperating with law enforcement in light of his/her new criminal charges. CI-31524

7

voluntarily gave the information in order to potentially lighten his/her sentence if found guilty of his/her current criminal case. CI-31524 has the following criminal convictions out of the state of New York; Misdemeanor – Issuing a bad check with knowledge of insufficient funds in 1996, Misdemeanor – Issuing a bad check with knowledge of insufficient funds in 1997, Misdemeanor – Larceny in 1998, Misdemeanor – Criminal trespass 2nd degree in 2001, Misdemeanor – Reckless endangerment 2nd degree in 2003, Misdemeanor – Operate vehicle with .08 of 1% alcohol in 2005, Misdemeanor – Criminal mischief: intent to damage property in 2005, Misdemeanor – Aggravated harassment in 2005, Felony – criminal possession of a controlled substance in 2007, Felony – Criminal possession of a weapon in 2015

30.    Your affiant consulted with an ATF Industry Operations Investigator and confirmed that MCCLAIN does not have a Federal Firearms License.

31.    For all of the above purchases from MCCLAIN, MCCLAIN utilized a silver Jeep Wrangler with WI Registration 978ZMP, which registers to JACAK.

32.    All purchases were set up by ATF CI 31524, utilizing recorded text messages, phone calls and Facetime/video messages. The directed communication between CI-31524 and MCCLAIN started on December 15, 2022. At that time, MCCLAIN was utilizing phone number 608-396-1713. On January 29, 2023, MCCLAIN began calling CI-31524 from cellphone number 920-273-9112. On the same date, MCCLAIN also sent the text message, "It's Torrence. New number," from cellphone number 920-273-9112. Between January 29th and March 11th of 2023, thirty-seven (37) phones calls and one hundred and fifty-six (156) text messages were made between MCCLAIN and CI-31524. All these calls and text messages were either sent or received by cellphone number 920-273-9112. Due to these conversations, Law Enforcement knows MCCLAIN to be currently utilizing cellphone number, 920-273-9112.

8

33.    Law Enforcement knows MCCLAIN was previously living in North Fond du Lac, WI and was willing to travel to multiple locations within the Eastern District of Wisconsin to complete firearms transactions, including the Milwaukee and Racine area.

34.    Law Enforcement also knows that MCCLAIN has family ties to the Racine/Kenosha area.

35.    Law Enforcement learned that MCCLAIN has recently moved to an unknown address in the area of Pleasant Prairie, WI.

36.    Obtaining the location of MCCLAIN'S cellphone, which he uses to communicate with ATF CI-31524 regarding firearms transactions, would allow Law Enforcement to establish where MCCLAIN is living and also possibly establish other locations which may be used by MCCLAIN in the commission of the above listed violations of federal law.

37.    In summary, there is probable cause to believe that MCCLAIN has committed felony violations of federal law as outlined above and there is probable cause to believe that the location information described in Attachment B will assist law enforcement in locating MCCLAIN.

38.    In my training and experience, I have learned that Verizon Wireless is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data

from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device but is typically less precise than E-911 Phase II data.

39.     Based on my training and experience, I know that Verizon Wireless can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Verizon Wireless Wireless's network or with such other reference points as may be reasonably available.

40.     Based on my training and experience, I know that Verizon Wireless can collect cell-site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as Verizon Wireless typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

10

41.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

42.     Based on my training and experience, I know that wireless providers such as Verizon Wireless typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service.  I also know that wireless providers such as Verizon Wireless typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Phone's user or users and may assist in the identification of co-conspirators and/or victims.

11

# AUTHORIZATION REQUEST

43.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c). The proposed warrant will also function as a pen register order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and/or trap and trace device to record, decode, and/or capture certain information in Attachment A for each communication to or from the Target Cell Phone, without geographic limit, for a period of thirty (30) days pursuant to 18 U.S.C. § 3123(c)(1).

44.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

45.     I further request that the Court direct Verizon Wireless to disclose to the government any information described in Attachment B that is within the possession, custody, or

control of Verizon Wireless. I also request that the Court direct Verizon Wireless to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Verizon Wireless's services, including by initiating a signal to determine the location of the Target Cell Phone on Verizon Wireless's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

46.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

**ATTACHMENT A**
**Property to Be Searched**

1. The cellular telephone assigned call number 920-273-9112 (the "Target Cell Phone"), whose wireless service provider is Verizon Wireless (the "Provider"), a wireless communications company that is headquartered at 180 Washington Valley Rd, Bedminster, NJ 07921; and

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of Verizon Wireless, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

3. The Target Cell Phone.

**ATTACHMENT B**
**Particular Things to be Seized**

## I. Information to be Disclosed by the Provider

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A. This information also includes: (i) any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN; (ii) Source and destination telephone numbers; and (iii) date, time, and duration of communication.

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A, and the following information about the customers or subscribers associated with the Target Cell Phone for the time period January 1, 2022, through the present:

i. Names (including subscriber names, user names, and screen names);

ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

iii. Local and long-distance telephone connection records;

iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

v. Length of service (including start date) and types of service utilized;

vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Verizon Wireless, Verizon Wireless is required to disclose the Location Information to the government. In addition, Verizon Wireless must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Verizon Wireless's services, including by initiating a signal to determine the location of the Target Cell Phone on Verizon Wireless's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**II. Information to Be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of Title 18, United States Code, Sections 922(a)(1)(A); 933, 922(d) and 922(o) by Torrance MCCLAIN and others during the relevant time period.

All information described above in Section I that will assist in locating Torrance MCCLAIN.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

3

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by Verizon Wireless, and my title is _____.  I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved.  I state that the records attached hereto are true duplicates of the original records in the custody of Verizon Wireless.  The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**.  I further state that:

a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Verizon Wireless, and they were made by Verizon Wireless as a regular practice; and

b.    such records were generated by Verizon Wireless's electronic process or system that produces an accurate result, to wit:

1.    the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Verizon Wireless in a manner to ensure that they are true duplicates of the original records; and

2.    the process or system is regularly verified by Verizon Wireless and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____    _____

Date                                        Signature

4